CORONET PHOSPHATE COMPANY, A CORPORATION, *Plaintiff in Error*, v. JULIUS E. JACKSON, BY HIS NEXT FRIEND, WILLIAM M. GARNER, *Defendant in Error*.

## Opinion Filed Feb. 18, 1913.

PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE—FOR NEGLIGENCE OF CO-EMPLOYEE, MASTER NOT LIABLE.

1. At the common law in force in this State, except in the case of railroad employees, where the master himself has per-

formed his duty, he is not liable to any one of his servants for the acts or negligence of any mere fellow servant or co-employee of such servant, where the fellow servant or co-employee whose negligence causes the injury does not sustain a representative relation to the master.

2. At the common law, in force in this State except in the case of railroad employees, where a servant is guilty of negligence that contributes proximately to his injury, he cannot hold the master liable for such injury.

Writ of error to the Circuit Court for Hillsborough County.

Judgment reversed.

*P. O. Knight,* for Plaintiff in Error;

*Thomas Palmer,* for Defendant in error.

TAYLOR, J.—The defendant in error, Julius E. Jackson, a minor of the age of eighteen years, by his next friend sued the plaintiff in error, a corporation engaged in mining phosphate, in an action for personal injuries, in the Circuit Court for Hillsborough County. By agreement of the parties the cause was referred to a referee for trial, and the trial resulted in a judgment against the defendant Phosphate Company in the sum of $5,250. This judgment the defendant below brings here for review by writ of error.

One of the errors assigned is that the referee erred in rendering a judgment in favor of the plaintiff below on the law applicable to the facts in proof, and that the referee erred in denying the motion of the defendant below for a new trial on the ground that the findings of the referee were not supported by the evidence and were contrary to the law applicable to the facts in proof.

A brief summary of the facts in the case as shown by the proofs is as follows: The defendant below is a corporation operating a phosphate mining plant and used electricity as its motive power in and about its plant. On the ground floor of a building at this plant the defendant had a wash room in which was situated machinery for washing phosphate after being taken from the mines; and in this room was a large electric switch-board constructed of marble, by which the currents of electricity were switched on and off from divers sets of wires leading out therefrom to various pits and other parts of the plant. One W. A. Simmons, an employee of the defendant company, was in charge of this wash room and the machinery and switch-board therein located. The plaintiff below, Julius Jackson, was also employed by the company in said wash room in the capacity of an oiler of the machinery located therein, and as part of his duties he sometimes cleaned up the yard around the building as well as on the inside of said wash room. For some time prior to the day of the accident to the plaintiff a set consisting of three electric wires, attached to said switch-board, that were formerly used in an abandoned pit, and that were supported on the outside of said building on a pole set in the ground, had been cut off from the pit to which they formerly led, and the ends of said cut off wires were left for some time prior to the day of the accident hanging down from the post that supported them. Two or three days prior to the accident the employees of the plant having use for this post or pole that supported this cut off set of wires, in another part of the plant removed said pole leaving said set of wires lying on the ground at the back of said building but still connected with the switch-board on the inside of said wash room.

On the morning of the day of the accident either the

plaintiff himself or his co-employee Simmons, by means of the switch-board on the inside of the wash room, carelessly turned on the electric current into this dis-used set of wires that were lying on the ground on the outside and at the back of said building. In the afternoon of that day the plaintiff Jackson went out to the back of said building, without examining said switch-board, to see whether or not the electric current was turned into said set of dis-used wires, which he could have discovered by a mere glance at said switch-board, with which he was thoroughly familiar, and there picked up said three wires in his left hand, said wires being thoroughly insulated, and then the exposed end of one of said wires coming in contact with his right hand the electric current therein of high voltage threw him on the ground with his back across the end of another of said wires, whereby he was severely burned in the hand and back, losing several fingers of his right hand besides being greatly shocked by the electric current. The plaintiff himself testified that it was a part of his duties to clean up any and all litter lying around the building, and that he picked up these wires for the purpose of rolling them up and placing them out of the way—but the overwhelming weight of the evidence is to the effect that no one instructed him to remove or in anywise interfere with the wires, and that it was the duty of the electricians alone to remove or handle any of the wires on the premises.

The proofs show that the plaintiff was at the time of the accident an intelligent youth of about the age of seventeen years, and that he well knew and understood the danger of coming in contact with wires when charged with electric current. Under these circumstances, we do not think that the plaintiff can in law hold the defendant company liable for his injuries for the reasons: (1)

Because if his own contributory negligence in wantonly picking up a live wire without first ascertaining whether or not it was charged with electric current, which he could have done by a mere glance at the switch-board in the room where he worked before going out to pick up the wire; (2) Because he was injured by the carelessness of a fellow servant, Simmons, in negligently turning on the electric current into said dis-used wires.

At the common law, where the master himself has performed his duty, he is not liable to any one of his servants for the acts of negligence of any mere fellow servant or co-employee of such servant, where the fellow servant or co-employee does not sustain a representative relation to the master.

And at the common law where a servant is guilty of negligence that contributes proximately to his injury, he cannot hold the master liable for such injury. Stearns & Culver Lumber Co. v. Fowler, 58 Fla. 362, 50 South. Rep. 680; Prairie Pebble Phosphate Co. v. Taylor, decided here at the last term.

These rules of the common law are in force in this State, and except in the case of employees of railroad companies have not been 'abrogated by our statutes. The findings and judgment of the referee should have been in favor of the defendant below. And the judgment herein is hereby reversed at the cost of the defendant in error.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, J. J., concur.

HOCKER, J., absent on account of illness.